# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | |
|---|---|
| LASHANWDA SURLES, Individually and for Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br><br>Defendant. | Case No. 2:22-cv-1376<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many companies across the United States, Wexford Health Sources, Inc. (Wexford Health or Defendant) and its timekeeping and payroll systems were affected by the hack of Kronos in late 2021.

2. That hack led to problems in timekeeping and payroll across the Wexford Health organization.

3. As a result, Wexford Health's non-exempt workers did not timely receive their agreed wages for hours worked.

4. As a result, Wexford Health's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

5. Plaintiff LaShanwda Surles (Surles or Plaintiff) is one such Wexford Health worker.

6. Wexford Health could easily have implemented a system to accurately record time and properly pay non-exempt employees until its issues related to the hack were resolved.

7. But Wexford Health did not do so. Instead, Wexford Health used prior pay periods and/or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

8. Wexford Health pushed the cost of the Kronos hack onto the most vulnerable people in its workforce and shifted the economic burden of the Kronos hack onto its frontline workers who rely on the full and timely payment of their wages to make ends meet.

9. Wexford Health's failure to timely pay proper wages, including overtime, for all hours worked to Surles and other workers like her violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

10. Surles brings this lawsuit to recover any and all unpaid wages, including overtime compensation, and other damages owed to her and to Wexford Health's other workers who were the ultimate victims of, not just the Kronos hack, but of Wexford Health's decision to make its own workers bear the economic burden of the hack.

11. This action seeks to recover the unpaid wages and other damages owed by Wexford Health to all these workers, along with penalties, interest, and other remedies allowed under federal and state law.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

14. Wexford Health is headquartered in this District in Allegheny County, Pennsylvania.

## THE PARTIES

15. Surles was an hourly officer worker for Wexford Health.

16. Surles worked for Wexford Health from approximately April 2018 until approximately May 2022.

17. Her consent to be a party plaintiff is attached as **Exhibit A**.

18. Surles brings this action on behalf of herself and all other similarly situated Putative Class Members under the collective action provisions of the FLSA. *See* 29 U.S.C. §216(b).

19. The class of similarly situated non-exempt Wexford Health employees is defined as:

> **All non-exempt employees who worked for, or on behalf of, Wexford Health in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present** ("Putative Class Members" or "FLSA Collective").

20. The identities of the Putative Class Members can be readily ascertained from Wexford Health's records.

21. Wexford Health is a company headquartered in Allegheny County, Pennsylvania, and may be served by serving its registered agent: Corporation Service Company, 2704 Commerce Drive, Suite B, Harrisburg, Pennsylvania 17110.

## COVERAGE UNDER THE FLSA

22. At all relevant times, Wexford Health was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Wexford Health was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, Wexford Health has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1),

25. At all relevant times, Wexford Health does have and did have employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise

working on goods or materials that have been moved in or produced for commerce, or in any closely related process or occupation directly essential to the production thereof.

26. At all relevant times, Wexford Health had an annual gross volume of sales made in excess of $1,000,000.

27. At all relevant times, Surles and the Putative Class Members (defined above) were employees engaged in commerce or in the production of goods for commerce.

## FACTS

28. Wexford Health is a healthcare services company that contracts with governmental entities to provide healthcare services.

29. Surles worked for Wexford Health from approximately April 2018 until approximately May 2022.

30. Surles performed work for Wexford Health in Alabama in a correctional facility setting.

31. Surles was primarily assigned to work at Staton Correctional Facility near Elmore, Alabama.

32. Surles was a phlebotomist and an office worker for Wexford Health.

33. Surles was a non-exempt hourly worker for Wexford Health.

34. Many other Wexford Health workers are non-exempt hourly and salaried workers, as Surles was.

35. Since at least 2021, Wexford Health has used timekeeping software and hardware operated and maintained by Kronos.

36. On or about December 11, 2021, Kronos was hacked with ransomware.

37. The Kronos hack interfered with the ability of Kronos customers and users, such as Wexford Health, to use Kronos resources and tools to track hours and pay employees.

38. Upon the onset of the Kronos hack and for months thereafter, Wexford Health failed to accurately track and record the hours that Surles and the Putative Class Members worked.

39. Instead, Wexford Health has elected to use various methods to estimate the number of hours Surles and the Putative Class Members worked in designated pay periods, and to similarly estimate the amount of pay to which Surles and the Putative Class Members are entitled for given pay periods.

40. For example, Wexford Health issued paychecks based on hours worked for previous pay periods prior to the Kronos hack.

41. As a result of Wexford Health's failure to accurately track and record actual hours worked for each pay period, employees who were non-exempt and worked overtime were not timely paid and in many cases were paid less the hours worked in a pay period, including overtime hours.

42. Many employees were not even timely paid for all their non-overtime wages for hours worked in certain workweeks.

43. Surles is one of the many employees affected by these post-Kronos pay and timekeeping practices of Wexford Health.

44. Instead of paying Surles for the hours she actually worked (including hours over 40 in a given workweek), during the timeframe that Wexford Health's payroll was disrupted due to the Kronos hack, Wexford Health paid Surles based on estimates of time and pay, independent from any link to her regular pay rate or to the hours she actually worked, and did so for multiple workweeks.

45. In some instances, Surles was not timely paid for all hours she worked, and Surles did not receive any overtime compensation for the weeks wherein Wexford Health was utilizing its post-Kronos practices and estimations as the basis for calculating her pay and hours worked.

46.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week and (2) the employee's regular rate, as calculated under applicable law.

47.     Wexford Health knows it has to timely pay proper wages and overtime premiums for all hours worked in excess of 40 in a workweek to non-exempt employees.

48.     Wexford Health could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

49.     It was feasible for Wexford Health to have its employees report accurate hours so they could be paid the full and correct amounts of money they were owed during the workweeks affected by the Kronos hack.

50.     Indeed, Surles reported the hours she worked to Wexford Health on a regular basis and continued to do so during the Kronos hack disruption, as did the Putative Class Members.

51.     However, instead of utilizing timesheets and timely paying employees' wages for hours worked and overtime premiums. Wexford Health decided to arbitrarily pay these employees at a standard rate, that fails to account for overtime hours they worked or the regular rates at which they were supposed to be paid.

52.     On December 27, 2021, Wexford Health circulated a letter (attached as **Exhibit B**) to its employees with an update as to how Wexford Health planned to handle the Kronos hack.

53.     Tellingly, as reflected in the Exhibit B excerpt below, in response to the Kronos hack, Wexford planned to pay all hourly employees at 75% of their standard pay "until further notice".

> 14  Until further notice, all hourly employees time will be figured at standard hours x standard pay @ 75% this is only a temporary calculation and will be rectified when our system is fully functional.

54. This December 27, 2021 communication also informs Wexford employees that Wexford will not be paying overtime, premiums, or bonuses "until [Wexford's] system is completely functional."

55. Put another way, Wexford Health pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, ensuring that it kept wages and overtime premiums owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work said employees performed.

56. Moreover, once the payroll system was functioning again, Wexford Health retroactively altered pay stubs for checks that had been paid before its system regained full functionality after the Kronos hack. In so doing, Wexford Health rendered the contents of said documents inaccurate.

57. For example, Surles received direct deposit payments from Wexford Health on December 17, 2021, on December 31, 2021, so Wexford Health did pay at least some of her earned wages on those paydays.

58. However, Surles's pay stubs for those pay periods were retroactively altered to show (incorrectly) that her "Net Pay" for those pay periods was $0.00. See excerpt from Surles's pay stubs (attached as **Exhibit C**) below, specifically the very bottom lines for "Net Pay":

| Earnings Statement | | | Earnings Statement | | |
|---|---|---|---|---|---|
| Employee ID | 000896963 | | Employee ID | 000896963 | |
| | Page 001 of 001 | | | Page 001 of 001 | |
| Period Beg/End: | 11/28/2021 - 12/11/2021 | | Period Beg/End: | 12/12/2021 - 12/25/2021 | |
| Advice Date: | 12/17/2021 | | Advice Date: | 12/31/2021 | |
| Advice Number: | 0000825394 | | Advice Number: | 0000828136 | |
| Batch Number: | 220126033930 | | Batch Number: | 220127055806 | |

Surles, Lashanwda Shuntia

Surles, Lashanwda Shuntia

| Deductions Statutory | This Period | Year-to-Date | Deductions Statutory | This Period | Year-to-Date |
|---|---|---|---|---|---|
| **Taxes** | | | **Taxes** | | |
| Alabama Regular I | 41.13 | 1060.85 | Alabama Regular I | 46.05 | 1086.90 |
| Fed Income Tax | 61.66 | 1575.13 | Fed Income Tax | 74.41 | 1649.54 |
| Medicare Tax | 16.08 | 406.31 | Medicare Tax | 17.62 | 423.93 |
| Social Sec Tax | 68.78 | 1737.33 | Social Sec Tax | 75.34 | 1812.67 |
| **Deductions** | | | **Deductions** | | |
| *AlreadyPd21 | 673.42 | 673.42 | *AlreadyPd21 | 673.42 | 1346.84 |
| *PayrllDue21 | 1.39 | 1.39 | *PayrllDue21 | 279.75 | 281.14 |
| 401K | 49.06 | 1233.47 | 401K | 48.61 | 1282.08 |
| AL Bankruptcy | 187.50 | 4032.50 | AL Bankruptcy | | 4032.50 |
| Dental | 33.43 | 802.32 | Dental | | 802.32 |
| LTD | 7.46 | 175.79 | LTD | | 175.79 |
| Medical | 78.05 | 1873.20 | Medical | | 1873.20 |
| Supplemental Life | 2.85 | 68.40 | Supplemental Life | | 68.40 |
| Vision | 5.80 | 139.20 | Vision | | 139.20 |
| Total Taxes & Ded | 1226.61 | 13759.31 | Total Taxes & Ded | 1215.20 | 14034.51 |
| Net Pay | 0.00 | 17134.80 | Net Pay | 0.00 | 17124.20 |

59.     This decision to retroactively modify pay stubs for monies that had already been paid to employees violates FLSA recordkeeping requirements. This conduct by Wexford Health renders the information contained in the pay stubs inaccurate. In addition, this Wexford Health decision makes it very difficult for the employees who had been paid at 75% their standard pay to use their pay stubs as a resource to help ensure Wexford Health did or does eventually pay them what was owed and make them whole.

60.     Surles's pay stubs contained similar inaccuracies for multiple pay periods.

61.     Surles is just one of the many Wexford Health employees who had to shoulder the burdens of these Wexford Health pay rate and recordkeeping decisions.

62.     Surles was a non-exempt hourly employee of Wexford Health.

63. Surles worked anywhere from 40 to 50 hours in a typical workweek.

64. Like Surles, the Putative Class Members are non-exempt employees of Wexford Health who also worked 40 to 50 hours in a typical workweek.

65. Wexford Health has failed to keep or maintain accurate records of the wages paid to Surles and the Putative Class Members during the Kronos hack and its aftermath.

66. Further, Surles and the Putative Class Members were not timely paid their proper non-overtime wages for the workweeks during the Kronos hack and its aftermath.

67. Surles and the Putative Class Members who worked overtime were not timely paid and in many cases were paid less the hours worked in a pay period, including overtime hours.

68. The full wages and overtime compensation owed to Surles and the Putative Class members became "unpaid" when the work for Defendant was done – that is, on the regular paydays of Surles and the Putative Class Members.

69. At the time Defendant failed to pay Surles and the Putative Class Members in full for their actual hours worked, including overtime hours, by their regular paydays, Defendant became liable for all prejudgment interest, liquidated damages, penalties, and any/all other damages owed under the law.

70. There is essentially no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993).

71. Moreover, the late or otherwise untimely payment of wages, including overtime compensation, in itself, does not resolve a claim for unpaid wages under the law *See, e.g., Seminiano v. Xyris Enterp., Inc.,* 602 Fed. Appx. 682 683 (9th Cir 2015); *Lynn's Food Stores Inc., v United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

72. Nor does the untimely payment of wages, if any, compensate workers for the damages incurred due to Wexford Health's acts and omissions resulting in the unpaid wages in the first place.

73. Surles and the Putative Class Members remain uncompensated for the wages and other damages owed by Wexford Health under federal law.

74. Wexford Health's failure to timely pay wages and overtime compensation to these workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

75. Surles realleges and incorporates by reference all allegations in preceding paragraphs.

76. Numerous individuals were victimized by Wexford Health's patterns, practices, and policies, which are in willful violation of the FLSA.

77. Based on her experiences and tenure with Wexford Health, Surles is aware that Wexford Health's illegal practices were imposed on the Putative Class Members.

78. Wexford Health failed to keep or maintain accurate pay records for Surles and the Putative Class Members.

79. Surles and the Putative Class Members were not timely paid their agreed wages for hours worked.

80. Surles and the Putative Class Members were not paid their full overtime premiums for all overtime hours worked.

81. These employees are victims of Wexford Health's respective unlawful compensation practices and are similarly situated to Surles in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

82. The workers in the Putative Class Members were similarly situated within the meaning of the FLSA.

83. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to accurate pay statements, and timely payment of wages, as well as overtime pay.

84. Wexford Health's failure to comply with FLSA recordkeeping requirements and failure to pay overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the Putative Class Members.

85. The Putative Class Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION 1: FLSA PAY VIOLATIONS

86. Surles incorporates all other allegations by reference.

87. By failing to pay Surles and the Putative Class Members overtime at 1.5 times their regular rates, Wexford Health violated the FLSA. 29 U.S.C. § 207(a).

88. Wexford Health owes Surles and the Putative Class Members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

89. Wexford Health owes Surles and the Putative Class Members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

90. Likewise, Wexford Health owes Surles and the Putative Class Members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week but were not paid in full for all hours.

91. Wexford Health knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to timely pay wages to the Putative Class Members and failing to pay the Putative Class Members overtime compensation.

92. Because Wexford Health knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Wexford Health owes these wages for at least the past three years.

93. Wexford Health's decision to respond to the Kronos hack by paying its hourly employees only 75% of standard pay "until further notice" was not made in good faith.

11

94. Wexford Health's failure to pay overtime compensation to these Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

95. Because Wexford Health's decision not to pay overtime was not made in good faith, Wexford Health also owes Surles and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

96. Accordingly, Surles and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### CAUSE OF ACTION 2: FLSA RECORDKEEPING VIOLATIONS

97. Plaintiff incorporates all preceding paragraphs by reference.

98. Wexford has failed to satisfy recordkeeping violations for the Putative Class Members.

99. By failing to implement a system to accurately record the time of Surles and the Putative Class Members, Wexford Health violated the FLSA. 29 U.S.C. § 211; 29 C.F.R. § 516.2.

100. Under the FLSA, Wexford is required to make, keep, and preserve accurate employment records for each employee. Wexford's records are required to reflect, among other things, the wages paid each pay period and the date(s) said wages were paid.

101. Wexford failed to maintain accurate employment records or payroll records for the Putative Class Members as required by the FLSA. Moreover, Wexford went one step further and retroactively modified pay stubs, ensuring by its conduct that said records were rendered inaccurate.

102. Wexford Health knowingly, willfully, or in reckless disregard carried out this illegal practice of failing to keep accurate employer records for the Putative Class Members.

103. Wexford Health knew, or showed reckless disregard for whether, its recordkeeping practices violated the FLSA.

104. Wexford Health's decision to cease keeping accurate pay and employment records for the Putative Class Members during the Kronos hack and its aftermath was not made in good faith.

105. Wexford Health's decision to retroactively modify the contents of the paystubs of Putative Class Members was neither reasonable, nor made in good faith.

106. Accordingly, Surles and the Putative Class Members have suffered damages, and Wexford Health owes Surles and the Putative Class Members accurate and timely earning statements, as well as any/all awards and recovery available under the law.

## JURY DEMAND

107. Surles demands a trial by jury.

## RELIEF SOUGHT

108. Surles prays for relief as follows:

   a. For an order designating the Putative Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an order finding Defendant liable for violations of federal wage laws with respect to Surles and the Putative Class Members covered by the instant case;

   c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Surles and all Putative Class Members covered by this case;

   d. For an equitable accounting and restitution of wages due to Surles and all Putative Class Members covered by this case;

e. For a judgment awarding attorneys' fees to Surles and all Putative Class Members covered by this case;

f. For a judgment awarding costs of this action to Surles and all Putative Class Members covered by this case;

g. For a judgment awarding pre-and post-judgment interest at the highest rates allowed by law to Surles and the Putative Class Members covered by this case; and

h. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
**Michael A. Josephson**
State Bar No. 24014780
Fed. Id. 27157
**Andrew W. Dunlap**
State Bar No. 24078444
Federal ID No. 1093163
**Carl A. Fitz**
State Bar No. 24105863
Fed. Id. 3158237
**Alyssa J. White**
State Bar No. 24073014
Fed Id. 1503719
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

AND

**Joshua P. Geist**
PA ID No. 85745
**William F. Goodrich**
PA ID No. 30235
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**