IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LASHANWDA SURLES** Individually and for others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:22cv1376 **Electronic Filing** |
| **WEXFORD HEALTH SOURCES, INC.,** | ) ) | |
| Defendant. | ) | |

# OPINION

## I.  INTRODUCTION

Presently before the Court is the motion for conditional certification filed by Lashanwda Surles ("Plaintiff"), pursuant to § 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").  (ECF No. 21).  In her complaint, Plaintiff asserts violations of the overtime provisions of the FLSA and seeks redress on behalf of herself and all others similarly situated.  (Docket No. 1 ¶ 86-90).  After careful consideration of the motion, the memoranda of the parties, and the record, the Plaintiff's motion will be granted.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

Wexford Health Sources, Inc. ("Defendant"), is a healthcare company that provides medical services to correctional institutions across the country.  (ECF No. 22 at 2).  At all relevant times, Plaintiff worked for Defendant as an Administrative Assistant in Elmore, Alabama.  (ECF No. 22-1 at ¶3).

On or about December 11, 2021, Defendant was subject to a ransomware attack which shut down access to its Kronos timekeeping software.  (ECF No. 24 at 4).  As a result, Defendant notified its employees that while it resolved the situation, employees should continue to punch in

and out while also completing a weekly paper timesheet. (ECF No. 22 at 3). The pay sheet was then subject to approval from a manager. (*Id.*).

In addition to the manual timekeeping, Defendant implemented a contingency plan to pay employees while the timekeeping software was non-operational. (ECF No. 22 at 1). Within the contingency plan, there were two options to ensure that employees would continue to be paid on a bi-weekly basis. (*Id.*). The first option paid employees based on the previous pay period, regardless of the hours the employee worked during the current pay period. (ECF No. 22-5 at 3). The second option, mainly for newly hired employees who had not received a paycheck from Defendant, paid employees based on their approved paper timesheet multiplied by 75% to factor in federal and state taxes. (*Id.*). For both options, any discrepancies in pay would be subsequently reconciled once Kronos was operational. (ECF No. 22-5 at 2).

The implemented contingency plan resulted in employees being both underpaid and overpaid. (ECF No. 24-1 at ¶ 31). Specifically, the named plaintiff was underpaid $293.01. (ECF No. 24-3 at 3). Plaintiff declares that her experiences as an hourly Wexford worker during the Kronos hack is "similar to that of other Wexford employees who were affected by the payroll system outage in the same way." (ECF No. 22-1 at ¶ 13).

Based on these allegations, Plaintiff's motion seeks conditional certification of the following FLSA collective:

> **All non-exempt employees who worked for, on or behalf of, Wexford Health Sources, Inc., in the United States at any time during the Kronos ransomware attack, on or about December 11, 2021, to the present ("Putative Class Members" or "FLSA Collective").**

Having completed a preliminary period of discovery, the instant motion for conditional class certification was filed. (ECF No. 21). The matter is fully briefed and ripe for disposition.

2

### III.  STANDARD OF REVIEW

The FLSA is a remedial form of humanitarian legislation that protects "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." Brock v. Richardson, 812 F.2d 121, 124 (3d Cir. 1987) (citing Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No., 123, 321 U.S. 590, 64 (1944)).  It does so in part by setting forth substantive wage, hour, and overtime standards.  Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 11 (2011).  To further its ends, the FLSA permits a plaintiff to recover lost wages in an action in any court of competent jurisdiction.  29 U.S.C. § 216(b).

The action in this case, a collective action, "is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint 'in behalf of' a group of other, initially unnamed employees who purport to be 'similarly situated' to the named plaintiff." Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 223 (3d Cir. 2016).  Such actions allow the plaintiffs to "minimize individual expense in pursuing wage rights through pooled resources and to benefit the judicial system through unitary resolution of common legal and factual issues arising from the same conduct."  Halle, 842 F.3d at 224 (citations omitted).  For the collective action to proceed, similarly situated employees must opt-in.  Halle, 842 F.3d at 224.  This requires the court to decide whether a potential class of opt-in plaintiffs is sufficiently alike to be considered "similarly situated."

Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA.  Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013) (citing Zavala v. Wal–Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)).  Under the first step, FLSA collective actions must be "'conditionally' certified by the district court, which 'requires a named plaintiff to make a modest factual showing –

3

something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members.'" Reinig v. RBS Citizens, N.A., 912 F.3d 115, 123 n.1 (3d Cir. 2018) (quoting Halle, 842 F.3d at 224). In other words, this initial step of conditional certification is a determination of whether similarly situated plaintiffs exist. Zavala, 691 F.3d at 536 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).

In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." Zavala, 691 F.3d at 536-37. Given the "modest burden" at the first stage of the proceedings, "motions for conditional certification are generally successful." Rood v. R&R Express, Inc., No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (citing Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 352 (W.D. Pa. 2018) ("The Court may make this determination with minimal evidence, Herring, 2007 WL 2121693, at *4, and this step's fairly lenient standard typically results in a grant of conditional certification. Moss, 201 F.R.D. at 409 (citing Mooney v. Aramco Servs., Co., 54 F.3d 1207, 1212 (5th Cir. 1995).").

The second step, referred to as "final certification," places upon the named plaintiff the burden of demonstrating that he or she is similarly situated to the opt-in plaintiffs. Halle, 842 F.3d at 226. Being similarly situated means that one is subject to some common employer practice that, if proven, would help demonstrate a violation of the FLSA. Zavala, 691 F.3d at 538. In making this determination, it is appropriate to look to a number of factors, specifically:

"(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." Andrako v. U.S. Steel Corp., 788 F. Supp.2d 372, 378 (W.D. Pa. 2011) (citing Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000); Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987)).

## IV. DISCUSSION

### A. Class Certification

Defendant challenges Plaintiffs request for certification on two distinct grounds. First, Defendant argues that the putative class is not similarly situated because of the "variety of differing work locations, jobs and schedules, the Plaintiff and the proposed class members were not subject to the same pay policies. Specifically, there were two different temporary pay policies put in place in response to the Kronos ransomware attack." (ECF No. 24 at 5). However, this Court already has recognized that the fact that the "plaintiffs held different jobs, in different departments, at different locations [] does not preclude conditional certification [provided] all were subject to the same allegedly unlawful policy." Bowser, 324 F.R.D. at 352. And here the putative class members admittedly were all subject to a uniform and company-wide pay practice regardless of whether they shared the same job title or performed the same duties.

Further, the persuasive precedent also supports the proposition that a plaintiff need not prove an absolute uniformity of facts with every putative class member to satisfy the lenient standard for conditional certification. Compare Beauchamp v. Penn Mut. Life Ins. Co., No. 10–7170, 2011 WL 3268161, at *5 (E.D. Pa. July 29, 2011) (rejecting arguments that the court should deny conditional certification because potential opt-in plaintiffs held different jobs in different departments and were terminated at different times); Taylor v. Pittsburgh Mercy Health Sys., No. 09–377, 2009 WL 2003354, at *3 (W.D. Pa. July 7, 2009) (rejecting arguments that the court should limit conditional certification of a hospital facility to employees who worked in the

same departments); Bishop v. AT & T Corp., 256 F.R.D. 503, 508–09 (W.D. Pa. 2009) (rejecting arguments that the court should deny conditional certification because potential class members worked at different geographical locations in offices with distinct operational procedures). Moreover, in almost of all these cases, the court stated that stage two, when discovery is complete, is the proper time to consider whether a class member should be excluded due to dissimilarities in job functions. Therefore, Defendant's arguments are premature and provide an insufficient reason to deny conditional certification at this stage of the proceeding.

Next, Defendant claims that Plaintiff has no reasonable basis for her allegations that she and the putative class have been victims of an FLSA violation. (ECF No. 24 at 13). Specifically, Defendant asserts that Plaintiff's claims of missing overtime payments are mere speculation. (*Id.*). In conjunction with this argument, Defendant contends that because Plaintiff and others were paid for any deficiency, their claim should fail. (*Id.*). However, these arguments are also premature and thus unavailing.

"Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." McConnell v. EN Eng'g, LLC, No. 2:20-CV-00153-MJH, 2020 WL 6747991, at *2 (W.D. Pa. Oct. 8, 2020) (citing Waltz v. Aveda Transp. & Energy Servs., Inc., No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)). Here, Plaintiff included declarations from herself, Edneshia Billingsley, and Emily Collopy in support of her motion. (ECF No. 22-1 – 22-3). As reflected in these declarations, declarants all 1) worked for Defendant during the relevant time period, 2) were hourly paid employees, 3) regularly worked more than forty (40) hours per week, 4) did not receive the correct wage for the pay periods, 5) were not initially compensated for any overtime, and 6) were all subject to the same nationwide practice of a contingency payment plan. (*Id.*). Further, declarants maintain that this practice was similar across multiple locations and other employees "experienced the same

6

problem" and their experiences are "similar to that of other Wexford employees." (ECF No. 22-3 at ¶12). Additionally, as reflected in Plaintiff's pleadings, specifically the attached memos from Defendant, Defendant's memo was addressed to "All Wexford Health Employees." (ECF No. 22-5 – 22-6). Thus, the combination of statements from the declarations, as well as language in the memos, provides a sufficient basis to find there is a factual nexus between the effect of Defendant's pay policies on Plaintiff and other Wexford employees.

Moreover, Plaintiff has demonstrated at least a colorable basis that Defendant's practices violated the FLSA. Courts have ruled differently regarding the length of time at which wages are deemed unpaid and thus violate the FLSA. Compare Rogers v. City of Troy, N.Y., 148 F.3d 52, 57 (2d Cir. 1998) (finding no violation of the FLSA for employer who changed the payday of its employees, even though the action resulted in late payment); Biggs v. Wilson, 1 F.3d 1537, 1539–40 (9th Cir. 1993) (refusing to treat late payment differently from nonpayment for FLSA purposes). And "the Third Circuit's approach more closely resembles Bigg*'s* bright-line rule than Rogers' exception." Solis v. A-1 Mortg. Corp., 934 F. Supp. 2d 778, 798 (W.D. Pa. 2013) (citing Martin v. Selker Bros., Inc., 949 F.2d 1286, 1299 (explaining that liability for liquidated damages may lie where employees do not receive their wages "at the time they were due") and Dunlop v. State of N.J., 522 F.2d 504, 512 (3d Cir. 1975) (recognizing FLSA's "immediacy of payment" requirement), vacated on other grounds sub nom., New Jersey v. Usery, 427 U.S. 909, (1976)). Therefore, Defendant's practice of duplicating inaccurate payments from previous pay periods, ultimately resulting in late payment, can be found to be a violation of the Third Circuit's prompt payment requirement. See Mathis v. About Your Smile, P.C., No. CIV.A. 02-CV-597, 2002 WL 1878894, at *2 (E.D. Pa. Aug. 14, 2002) (recognizing that "courts have consistently interpreted the statute [FLSA] to include a prompt payment requirement) (citations omitted); Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 136 (3d Cir. 1999) (holding that a deferment of

overtime wages for six weeks violated the FLSA's prompt payment requirement); Dunlop, 522 F.2d at 512 (recognizing FLSA's "immediacy of payment" requirement). Beyond this showing, the questions surrounding Defendant's reconciliation defense and whether each potential class member has a viable claim or will ultimately prevail are merits-based arguments that need not be entertained at the conditional certification stage.

Finally, because the Kronos ransomware attack spread nationwide and affected numerous businesses, litigation on similar issues is pending in other jurisdictions. As a result, additional support for this court's decision can be found in the rulings of other district courts on the same issue. Compare Robinson v. Maricopa Cnty. Special Health Care Dist., No. CV-22-00943-PHX-DWL, 2023 WL 6391052, at *7 (D. Ariz. Sept. 30, 2023) (granting the plaintiff's motion for conditional certification against a defendant that duplicated the time keeping records from the previous pay period); Thornton v. Tyson Foods, Inc., No. 5:22-CV-05077, 2023 WL 4712035, at *6 (W.D. Ark. July 24, 2023) (same); Gaul v. Accura Health Ventures, LLC, 651 F. Supp. 3d 1054, 1066 (S.D. Iowa 2023) (granting the plaintiff's motion for conditional certification on claims that the defendant "violated the FLSA by aggregating data across multiple pay periods;" and used "an overpayment or withholding error in a subsequent pay period . . . to offset an FLSA violation from an earlier pay period.").

Having reviewed Plaintiff's motion in light of the relevant standard and applicable factors, as well as the supporting case law, it is clear that she has met her initial burden of demonstrating that she is similarly situated to a collective of non-exempt workers who worked for Defendant during the Kronos outage.

### B. Notice

Once conditional certification is granted, the court may approve notice and consent forms to be sent to putative class members which advise them of their opportunity to participate in the

collective action.  Halle, 842 F.3d at 225.  It is well-established that district courts have broad discretion in directing notice to potential opt-in plaintiffs.  Bellan v. Cap. BlueCross, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)).  Nevertheless, the United States Supreme Court has noted that in exercising this discretionary authority, the district courts must "be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the merits of the action."  Hoffmann-La Roche, 493 U.S. at 174.

According to Defendant, Plaintiff's motion is too broad in scope and time because it encompasses all non-exempt employees from December 11, 2021, to the present.  (ECF No. 24 at 17).  As a result, Defendant implies that the notice period should be from December 11, 2021, to January 13, 2022.  (ECF No. 24 at 18).  While not agreeing with the dates provided by the Defendant, the Court generally agrees with Defendant's contention that the notice period should not be unlimited.

Moreover, in Plaintiff's First Supplement to her Motion for Conditional Certification, Plaintiff filed the motion for herself and others similarly situated: "that is, Wexford's non-exempt workers from December 2021 through February 2022 during the Kronos outage."  (ECF No. 33 at 1).  Given this understanding, it is appropriate that the notice likewise should cover only the dates that are relevant to the alleged FLSA violation.  Taking into consideration Plaintiff's concern that it is "simply too early for the Court to determine, definitively, that the 'Kronos system was restored on January 13, 2022;' that Wexford resumed its 'normal pay practices' on that date; or that no employee working beyond these dates was harmed by the Kronos outage;" it is clear that these concerns can be remedied through the use of appropriate and precise language.

9

As noted above, other district courts have also ruled on this matter. In those cases, the court ordered, or the parties stipulated, that notice would encompass those who worked during "December 2021 and/or January 2022" (Gaul supra), "from December 11, 2021, until January 15, 2022" (Thornton supra), and "at any time between December 11, 2021 and January 19, 2022." (Robinson supra). In none of these cases did the court, even when offering guidance to the parties, indicate that the notice should be ongoing. This Court also finds that such notice would be inappropriate.

Moreover, it appears that implementing language similar to *Gaul* would provide notice that is "timely, accurate, and informative" while also setting a reasonable cutoff date to assure the action's timely disposition. Hoffmann-La Roche Inc., 493 U.S. 165, 166 (1989). Thus, the collective will be certified as to any non-exempt employee who worked for defendant at any time during the Kronos ransomware attack and appropriate notice language to be used by the parties will be included in the concomitant order.

Defendant also objects to statements in the notice which it claims presume the employees have a claim for unpaid wages and "gives the erroneous impression that maintenance of the action has a judicial imprimatur of approval." (ECF No 24 at 18) (quoting Sperling v. Hoffman-La Roche Inc, 862 F.2d 439, 447 (3d Cir. 1998). The proposed notice specifically states: "[t]he Court has taken no position regarding the merits of the claims or defenses at issue." (ECF No 22-8 at 2). Further, the notice reiterates that "[t]he Court has not ruled on the merits of this case" and uses phrases such as "may recover damages," which reflect expressions of possibility but not certainty. Therefore, the proposed notice stops short of creating such an impression and the challenged statements may be utilized in the notice.

Finally, Defendant objects to the multiple forms of notice and states that Plaintiff's counsel should not be able to "text potential class members or make phone calls to those with

undeliverable mail or be permitted to follow up with any potential class members via telephone or text." (ECF No. 24 at 18).  In support of its assertion, Defendant cites the opinions of other non-binding district courts.  However, numerous judges in this district consistently have held that "it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers."  Weinmann v. Cont. Land Staff, LLC, No. 2:22-CV-01140-CCW, 2023 WL 3881394, at *7 (W.D. Pa. June 8, 2023) (quoting Belt v. P.F. Chang's China Bistro, Inc., No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020)); accord Wintjen v. Denny's, Inc., No. 2:19-CV-00069-CCW, 2021 WL 5370047, at *19 (W.D. Pa. Nov. 18, 2021) (same); Copley v. Evolution Well Servs. Operating, LLC, No. 2:20-CV-1442-CCW, 2022 WL 295848, at *7 (W.D. Pa. Jan. 31, 2022) (same); McGhee v. TOMS King, LLC, No. 2:19-CV-01470-RJC, 2021 WL 1176097, at *9 (W.D. Pa. Mar. 29, 2021) (same); Bruno v. Wells Fargo Bank N.A., No. 2:19-CV-00587-RJC, 2021 WL 964938, at *6 (W.D. Pa. Mar. 15, 2021) (same).  Given the extensive support for this type of notice in our district, the Court sees no reason to reach a different conclusion here.

    An appropriate order will follow.

Date: March 1, 2024

                                              s/David Stewart Cercone
                                              David Stewart Cercone
                                              Senior United States District Judge

cc:      Andrew W. Dunlap, Esquire
         Alyssa White, Esquire
         Ian Justice, Esquire
         Joshua P. Geist, Esquire
         William F. Goodrich, Esquire
         Kimberly Sumner Moore, Esquire
         Amy McCrossen, Esquire
         Andrew J. Ruxton, Esquire

         (*Via CM/ECF Electronic Mail*)